UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**14 CV 2461**

INTERNATIONAL BUSINESS MACHINES CORPORATION,

Plaintiff,

v.

RICHARD DORION,

Defendant.

Civil Action No. 14 Civ. _____

**COMPLAINT**

Plaintiff International Business Machines Corporation ("IBM," the "Company" or "Plaintiff"), by its attorneys Jackson Lewis P.C., for its Complaint against Richard Dorion ("Dorion" or "Defendant"), states as follows:

## A. Nature of the Action

1. IBM brings this action for monies due and owing to IBM by Defendant, pursuant to the terms of the IBM PWCC Long Term Performance Plan (the "Plan" or "LTPP").

2. During all relevant times herein, Dorion was a participant in the LTPP under which Dorion received equity awards, which would be subject to cancellation and rescission if Dorion engaged in detrimental activity under the Plan or failed to comply with the terms and conditions of the Plan, his Equity Award Agreements ("EAAs"), or the Agreement for California Executives Regarding Confidential And Proprietary Information ("Confidentiality Agreement").

3. Dorion forfeited his right to retain the monetary benefits of his equity awards when he voluntarily retired on September 30, 2012, and then went to work for Ernst & Young ("E&Y"), a direct competitor of IBM and used IBM confidential business information while employed by this direct competitor to solicit IBM customers.

4. IBM brings this action for monies due and owing to IBM by Defendant.

B. **The Parties**

5. IBM is a corporation organized under the laws of the State of New York with its principal place of business located in Armonk, New York, within the Southern District of New York.

6. Dorion is an individual and a former employee of IBM.

7. Dorion was employed by IBM in its Global Business Services Division, providing consulting services with a focus on the media industry.

8. IBM hired Dorion on October 1, 2002.

9. During his long history of employment at IBM, Dorion received numerous promotions and pay raises and became a high level, highly compensated executive.

10. After ten years of employment at IBM, Dorion voluntarily retired from his position. Immediately following his voluntary retirement from employment with IBM, Dorion became employed by E&Y, a direct competitor of IBM.

11. Upon information and belief, Dorion resides in Phillips Ranch, California.

C. **Jurisdiction and Venue**

12. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum of $75,000, exclusive of costs and interest, and there is complete diversity of citizenship between the parties.

13. The Court has personal jurisdiction over Dorion because he was employed by IBM, a New York corporation, headquartered in New York.

14. This Court also has personal jurisdiction over Dorion because the parties contractually agreed to the Jurisdiction of this Court by the terms of the contracts referred to in the EAAs, including the LTPP and Terms and Conditions of your Equity Award: Effective June

8, 2011 ("Equity Award Terms and Conditions").

15. Venue properly lies in this Court pursuant to 28 U.S.C. § 1391 because IBM's headquarters and principal place of business are situated within this judicial district and a substantial part of the events giving rise to the claims occurred in this judicial district.

16. Venue also properly lies in this Court pursuant to the parties' agreement contained in both the LTPP and Equity Award Terms and Conditions.

## D. The LTPP

17. The LTPP is designed to attract, motivate and retain selected employees of the Company. These objectives are accomplished by making long-term incentive and other awards under the Plan, thereby providing participants with a proprietary interest in the growth and performance of IBM.

18. Section 13(a) of the LTPP provides, in pertinent part:

> Unless the Award Agreement specifies otherwise, the Committee may cancel, rescind, suspend, withhold or otherwise limit or restrict any unexpired, unpaid, or deferred Awards at any time if the Participant is not in compliance with all applicable provisions of the Award Agreement and the Plan, or if the Participant engages in any 'Detrimental Activity.' For purposes of this Section 13, 'Detrimental Activity' shall include: (i) the rendering of services for any organization or engaging directly or indirectly in any business which is or becomes competitive with the Company, or which organization or business, or the rendering of services to such organization or business, is or becomes otherwise prejudicial to or in conflict with the interest of the Company....(v) a violation of any rules, policies, procedures or guidelines of the Company, including but not limited to the Company's Business Conduct Guidelines...[and] (viii) any other conduct or act determined to be injurious, detrimental or prejudicial to any interest of the Company.

19. Section 13(b) of the LTPP provides, in pertinent part:

> Upon exercise, payment or delivery pursuant to an Award, the Participant shall certify in a manner acceptable to the Company that he or she is in compliance with the terms and conditions of the Plan. In the event a Participant fails to comply with the [Detrimental Activity] provisions...of this Section 13 prior to, or during the Rescission Period, then any exercise, payment or delivery may be

rescinded within two years after such exercise payment or delivery. In the event of any such rescission, the Participant shall pay to the Company the amount of any gain realized or payment received as a result of the rescinded exercise, payment or delivery, in such manner and on such terms and conditions as may be required, and the Company shall be entitled to set-off against the amount of any such gain any amount owed to the Participant by the Company. As used herein, Rescission Period shall mean that period of time established by the Committee which shall not be less than 6 months after any exercise, payment or delivery pursuant to an Award.

20. Section 15(f) of the LTPP provides in pertinent part:

In the event that a Participant or the Company brings an action to enforce the terms of the Plan or any Award Agreement and the Company prevails, the Participant shall pay all costs and expenses incurred by the Company in connection with that action, including reasonable attorneys' fees, and all further costs and fees, including reasonable attorneys' fees incurred by the Company in connection with collection.

21. Section 15(e) of the LTPP states that it is governed by New York law and that "recipients of an Award under the Plan are deemed to submit to the exclusive jurisdiction and venue of the federal or state courts of New York, County of Westchester, to resolve any and all issues that may arise out of or relate to the Plan or any related Award Agreement."

### E. IBM's Grant of Equity Awards to Dorion

22. On or about March 8, 2005, IBM granted Dorion 2,408 stock options which would become exercisable in four equal installments on the first four anniversaries of the date of the grant.

23. On or about May 8, 2008, IBM granted Dorion an Equity Award comprised of 258 shares of Restricted Stock Units ("RSUs") which were scheduled to vest on May 8, 2012.

24. On or about June 8, 2009, IBM granted Dorion an Equity Award comprised of 139 shares of RSUs which were scheduled to vest on June 8, 2012.

25. On or about June 8, 2010, IBM granted Dorion an Equity Award

4

comprised of 101 shares of RSUs which were scheduled to vest on June 8, 2012.

26.     On or about June 8, 2011, IBM granted Dorion an Equity Award comprised of 98 shares of RSUs which were scheduled to vest on June 8, 2012.

27.     IBM's grants to Dorion became effective after and were conditioned upon him accepting the terms and conditions of (a) the LTPP under which these long term incentive awards were granted, (b) the EAAs, and (c) the accompanying Equity Award Terms and Conditions, including those provisions of the foregoing related to the cancellation and rescission of equity awards.

### F. The EAAs

28.     Dorion was required to sign EAAs in order to receive each stock option and Equity Award grant.

29.     Each EAA provides:

> IBM may cancel, modify, rescind, suspend, withhold or otherwise limit or restrict this [A]ward in accordance with the terms of the Plan, including, without limitation, canceling or rescinding this [A]ward if you render services for a competitor prior to, or during the Rescission Period. You understand that the Rescission Period that has been established is 12 months.

30.     The EAAs pertaining to RSUs also stated that "[t]he purpose of this Award is to retain selected employees and executives, [and] [y]ou recognize that this Award represents a potentially significant benefit to you and is awarded for the purpose stated here."

31.     The EAA pertaining to stock options also stated that "[t]he purpose of this grant is to retain selected executives and employees whose skills and talents are important to IBM's operations and to align their interests with those of IBM's stockholders [and] [y]ou recognize that these options represent a potentially significant benefit to you and are granted for the purposes stated here."

32.     The EAAs pertaining to RSUs also stipulates that Dorion's "participation

5

in the [LTPP was] voluntary."

### G. The Equity Award Terms and Conditions

33. The Equity Award Terms and Conditions, which apply to Dorion's Equity Awards currently subject to rescission, state, in pertinent part:

> All determinations regarding enforcement, waiver or modification of the cancellation and rescission and other provisions of the Plan and your Equity Award Agreement...shall be made in IBM's sole discretion. Determinations made under your Equity Award agreement and the Plan need not be uniform and may be made selectively among individuals, whether or not such individuals are similarly situated.

34. The Equity Award Terms and Conditions also state, in pertinent part:

> You agree that the cancellation and rescission provisions of the Plan and your Equity Award Agreement are reasonable and agree not to challenge the reasonableness of such provisions, even where forfeiture of your Award is the penalty for violation.

35. The Equity Award Agreement Terms and Conditions specify that each EAA is governed by New York law and that recipients "submit to the exclusive jurisdiction and venue of the federal or state courts of New York, County of Westchester, to resolve all issues that may arise out of or relate to [an] Equity Award Agreement."

### H. The Confidentiality Agreement

36. The Confidentiality Agreement, which Dorion signed on July 4, 2009, states in pertinent part:

> (1)(a) You acknowledge and agree that: (i) the business in which IBM and its affiliates (collectively, the "Company") are engaged is intensely competitive and that your employment by IBM has required, and will continue to require, that you have access to, and knowledge of, confidential information of the Company, including but not limited to, certain of all of the Company's methods, information, systems, plans for acquisition or disposition of products, expansion plans, financial status and plans, customer lists, client data, personnel information and trade secrets of the Company, all of which are of vital importance to the success of the Company's business (collectively, "Confidential Information"); (ii) the disclosure of any of the foregoing would place the Company at a serious

competitive disadvantage and would do serious damage, financial and otherwise, to the business of the Company; (iii) you have been given access to, and developed relationships with, customers of the Company at the time and expense of the Company; and (iv) by your training, experience and expertise, your services to the Company are, and will continue to be, extraordinary, special and unique.

You acknowledge and agree that you will keep in strict confidence, and will not, directly or indirectly, at any time during or after your employment IBM, disclose, furnish, disseminate, make available or, except in the course of performing your duties of employment, use any trade secrets or confidential business and technical information of the Company or its customers or vendors, without limitation as to when or how you may have acquired such information. Such information shall include, without limitation, the Company's unique selling, manufacturing and servicing methods and business techniques, training, service and business manuals, promotional materials, training courses and other training and instructional materials, vendor and product information, customer and prospective customer lists, other customer and prospective customer information and other business information. You specifically acknowledge that all such information, whether reduced to writing, maintained on any form of electronic media, or maintained in your mind or memory and whether compiled by the Company, and/or you, derives independent economic value from not being readily known to or ascertainable by proper means by others who can obtain economic value from its disclosure or use, that reasonable efforts have been made by the Company to maintain the secrecy of such information, that such information is the sole property of the Company and that any retention and use of such information by you during or after your employment with IBM (except in the course of performing your duties and obligations hereunder) shall constitute a misappropriation of the Company's trade secrets.

       37.    The Confidentiality Agreement also specifies that "[f]or purposes of the LTPP and any awards thereunder (including any awards outstanding on the date of this Agreement) (collectively, the 'LTPP Awards'), if you engage in conduct in breach of this Agreement prior to, or within twelve (12) months after, any delivery or payout pursuant to any LTPP Awards, then such conduct shall also be deemed to be a breach of the terms of such LTPP Awards, justifying cancellation or rescission of any such LTPP Awards."

       38.    The Confidentiality Agreement specifies that it is governed by New York law and that "[t]he Employee consents to the exclusive jurisdiction and venue in the federal and

state courts of the State of New York, County of Westchester, for the resolution of all disputes arising under, or relating to, this Agreement."

## I. Dorion's Equity Award Gains

39. On or about January 9, 2012, Dorion exercised 200 stock options, which had been granted March 8, 2005, amounting to a total gain of $15,856.24.

40. On or about February 29, 2012, Dorion exercised 402 stock options, which had been granted March 8, 2005, amounting to a total gain of $38,861.34.

41. On or about May 8, 2012, the 258 RSUs awarded to Dorion on May 8, 2008 vested and were released into Dorion's Morgan Stanley Smith Barney account. The value of these RSUs as of May 8, 2012 was $51,956.04.

42. On or about June 8, 2012, the 139 RSUs awarded to Dorion on June 8, 2009 vested and were released into Dorion's Morgan Stanley Smith Barney account. The value of these RSUs as of June 8, 2012 was $26,954.88.

43. On or about June 8, 2012, the 101 RSUs awarded to Dorion on June 8, 2010 vested and were released into Dorion's Morgan Stanley Smith Barney account. The value of these RSUs as of June 8, 2012 was $19,585.92.

44. On or about June 8, 2012, the 98 RSUs awarded to Dorion on June 8, 2011 vested and were released into Dorion's Morgan Stanley Smith Barney account. The value of these RSUs as of June 8, 2012 was $19,004.16.

45. Dorion gained a total of $172,218.58 in Equity Awards, as described in Paragraphs 39-44, that is now subject to rescission.

## COUNT I— Breach of Terms of Equity Awards

46. IBM repeats and realleges each and every allegation contained in Paragraphs "1" through "45" of the Complaint, with the same force and effect as set forth herein

at length.

47. On or about September 30, 2012, Dorion voluntarily retired from IBM.

48. Shortly thereafter, IBM learned that Dorion commenced employment with E&Y.

49. Dorion had previously acknowledged that, pursuant to the LTPP, if he chose to join a competitor within the Rescission Periods, as defined in the EAAs, his awards issued under the LTPP would be forfeited.

50. Upon information and belief, in or about February and March 2013, Dorion, on behalf of E&Y, solicited IBM customers, specifically: (1) delivering a sales pitch to an IBM client's executive to perform SAP work; (2) meeting with an IBM client's chief information officer and director of SAP; and (3) selling an HEG Assessment tool to an IBM client which IBM had in its pipeline.

51. Upon information and belief, Dorion used IBM confidential business information, as well as his institutional knowledge of IBM's practices and procedures, to solicit these IBM customers in contravention of the Confidentiality Agreement.

52. On March 12, 2013, IBM sent Dorion a letter reminding him of his legal and contractual obligations to IBM.

53. In this letter, IBM advised Dorion that becoming employed by E&Y, a competitor (as that term is defined under the LTPP) to IBM, within 12 months of receiving equity awards, entitled IBM to rescind the awards.

54. The March 12, 2013 letter also advised Dorion that there was reason to believe that he may have solicited IBM customers with which he was involved as part of his job responsibilities during the last year of his employment with IBM.

55. Dorion's employment with E&Y, and his use of IBM confidential business information to solicit IBM customers while employed by E&Y, qualifies as "Detrimental Activity" as that term is defined under Section 13(a)(i), (v), and (viii) of the LTPP entitling IBM to seek rescission of Dorion's Equity Awards he gained during the 12 month period prior to accepting a job at E&Y.

56. As a result of Dorion's decision to commence employment with E&Y during the applicable Rescission Periods, and thereafter solicit IBM customers while employed by E&Y, pursuant to the LTPP, EAAs, Equity Award Terms and Conditions, and Confidentiality Agreement, on March 12, 2013, IBM exercised its right to rescind Dorion's Equity Awards, totaling $172,218.58.

57. IBM's March 12, 2013 letter directed Dorion to repay IBM by March 25, 2013.

58. Dorion has failed to remit payment to IBM despite this March 12, 2013 demand.

59. Dorion owes IBM $172,218.58.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff IBM demands judgment in its favor and against Defendant Dorion as follows:

1. Payment by Dorion to IBM of a sum not less than $172,218.58, together with interest;

2. Awarding IBM its attorneys' fees, costs, and disbursements incurred as a result of this action; and

      3.      Awarding IBM such other and further relief as the Court deems just and proper.

                                    Respectfully submitted,

                                      JACKSON LEWIS P.C.
                                    666 Third Avenue
                                    New York, New York 10017
                                    (212) 545-4000

Dated: April 8, 2014                  By: _____
       New York, NY                        Kevin G. Lauri (KL 8714)
                                          Dana G. Weisbrod (DW 0527)
                                          Daniel D. Schudroff (DS 0525)

                                      ATTORNEYS FOR PLAINTIFF
                                      INTERNATIONAL BUSINESS MACHINES
                                      CORPORATION